

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JAN 2 9 2019

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

SAMANTHA J JACKSON  (Plaintiff)                     CIVIL ACTION NO. : **6:19-cv-0116**

VERSUS

AT&T RETIREMENT SAVINGS PLAN,                     JUDGE:

MOBILITY PROGRAM OF THE AT&T BENEFIT

PLAN, AT&T, INC, AT&T SERVICES, INC                MAGISTRATE JUDGE:

 and FIDELITY SERVICE CENTER

   (Defendants)

<u>COMPLAINT</u>

"JURY TRIAL DEMAND"

1. The plaintiff, in this case, Samantha J Jackson, a Pro SE' litigant is a citizen of

   Louisiana with a mailing address of 221 Tennessee Street, Lafayette, LA 70501.

2. The first defendant, in this case, is AT&T Retirement Savings Plan, whose mailing

   address is CT Corporation 350 N St Paul St, Dallas, TX 75201.

3. The second defendant, in this case, is Mobility Program of the AT&T Pension Benefit

   Plan, whose mailing address is CT Corporation Systems 1999 Bryan Street, Suite 900,

   Dallas, TX 75313-2160.

4. The third and fourth defendants, in this case, are AT&T, Inc. and AT&T Services, Inc.,

   with a mailing address of AT&T, Inc.  P.O. Box 132160 Dallas, TX 75313-2160.

5.  The fifth defendant, in this case, is Fidelity Investments, whose mailing address is 100 Crosby Parkway, Covington, KY 41015.

6.  This court has jurisdiction over this civil action because the plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, et seq., and is brought under ERISA § 502(a)(2) and (5), 29 U.S.C. § 1132(a)(2) and (5), to enjoin acts and practices which violate the provisions of Title I of ERISA, to obtain appropriate equitable relief for breaches of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, and to obtain such further equitable relief as may be appropriate to redress violations and to enforce the provisions of Title I of ERISA under Section 502(a)(3) of ERISA, 29 U.S.C. 1132(a)(3).

7.  This court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

8.  The AT&T Retirement Savings Plan (the "Plan") and Mobility Program of the AT&T Pension Benefit Plan (Plan) are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1102(3), and is therefore subject to the coverage of the Act, pursuant to Section 4(a) of ERISA, 29 U.S.C. § 1103(a). The Plans are administered in Lafayette, Louisiana.

9.  Venue with respect to this action lies in the Western District of Louisiana pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2).

Page 2

10. Plaintiffs assert that she is authorized to sue under ERISA 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a) (3).  A civil action may be brought— (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title; (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

11. Plaintiff requests a jury trial.

12. At all relevant times, defendants, AT&T Retirement Savings Plan (the "Plan"), Mobility Program of the AT&T Pension Benefit Plan (Plan), Fidelity Service Center and AT&T, Inc. and  AT&T Services, Inc. will be referred to as the "Savings Plan", "Pension Plan", "AT&T" or "the Company" and "Fidelity", respectively.

13. At all relevant times, AT&T, has been the Plan Sponsor and AT&T Services, Inc. has been the Plan Sponsor and Administrator of both the Savings Plan and the Pension Plan.  At all relevant times, the Company has exercised discretionary authority or discretionary control respecting management of the Plan, exercised authority of control management or disposition of the Plan's assets and had discretionary authority or discretionary responsibility in the administration of the Plan.

14. At all relevant times, the Company has authorized the Plan Benefits Committee to exercise discretionary authority or discretionary control in making determinations

regarding questions relating to the right of any person to a benefit and amount of any benefit under the Plan.  The Company, therefore, is a fiduciary of the Savings plan and Pension plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21), and a party-in-interest as that term is defined in Sections 3(14)(A) and (C) of ERISA, 29 U.S.C. §§ 1002(14)(A) and (C).

15.  At all times relevant, Fidelity Service Center has been the Record keeper of record of both the Savings Plan and the Pension Plan and is joined as a party defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.  At all relevant times, the Company has authorized Fidelity to exercise discretionary authority or discretionary control in making decisions regarding invest plan assets, and how it will handle participant investment directions.  Fidelity, therefore, is a fiduciary of the Savings plan and Pension plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

## **General Allegations**

16.  On January 1, 2009, both the Cingular Wireless 401(k) Savings and Cingular Wireless Pension Plan were replaced by the AT&T Retirement Savings Plan (ARSP) and The Mobility Program of the AT&T Pension Benefit Plan, which were adopted on above said date.  The Savings Plan, which includes a Profit-sharing component paying dividends, permits participants to contribute a portion of their pay to the Plan as elective salary deferrals (employee contributions) through payroll deductions.   The Pension Plan is fully funded by employer contributions.

## AT&T Retirement Savings Plan (ARSP)

17. The definition of Nondiscretionary Incentive Compensation states that the amount of compensation paid to an Employee over a specified period that is:

    (a) Identified in a documented Employer compensation program;

    (b) Intended primarily to motivate Employee performance;

    (c) Measured by the attainment of a fixed objective that is based on a predetermined set payment formula for each unit of accomplishment;

    (d) Not subject to Employer discretion; and

    (e) Communicated to Employees prior to a specified performance period.

18. The company was advised of the discrepancy but their response to plaintiff's complaint was that the awards would not qualify as Nondiscretionary Incentive Compensation because it was a discretionary program although this directly conflicts with the Plan Text document.

19. The Company states that the Benefit of the Savings Plan is the amount that would be transferred into the new plan. However, Section 13.4 Merger, Consolidation and Transfer of Assets and Liabilities states, "In the event of any merge or consolidation of the Plan with, or transfer of assets or liabilities of the Plan to, any other plan, each Participant or Beneficiary shall have a plan benefit in the surviving to transferee plan (determined as if such plan were then terminated immediately after such merger, consolidation or transfer of assets or liabilities) that is equal to or greater than the

benefit he would have been entitled to receive under the Plan immediately before such merger, consolidation or transfer of assets or liabilities, if the Plan had terminated at that time.

## Mobility Program of the AT&T Pension Benefit Plan

20.  The Pension plan and the Plan's adoption required the Company to remit employer contributions to the Pension Plan.

21.  The Pension Plan Text states, "Pension Compensation is the monthly wages paid by a Participating Company and includes: W-2 wages, Any before-tax, elective deferrals under sections 125, 457, and/or 132(f) of the Internal Revenue Code, and All before-tax salary deferral or reduction made to a nonqualified deferred compensation plan by a member of the AT&T Controlled Group.

22.  A letter received from Fidelity Service Center, dated March 14, 2018, shows that Non-Discretionary bonuses are considered Pension eligible compensation.

## Incentive Plan Information

23.  The Monthly Incentive plan document follows all rules to be included as Compensation according to the plan text document.  The Plan Text overrides information in the Summary Plan Description, if conflicting with the Plan Text. Therefore the definition of Compensation according to the Plan Text supersedes misplaced statements declaring that the program is discretionary in the Incentive

Page 6

Plan document.  The following statements are in direct conflict with the document itself as is shown in the Eligibility Requirements & Business Guidelines and the Monthly Incentive Payout Table.

    A.  This incentive does not constitute a contract of employment or guarantee that any amount of compensation will be paid.

    B.  No particular payout amount is promised or guaranteed.

    C.  This program is a discretionary incentive and is not a contract.

These statements do not constitute that the Incentive plan itself is discretionary but rather that there is some confusion by Company of what the document actually means.  This document itself removes the capability of someone deciding upon themselves to disqualify an individual from receiving the payout amounts promised based on their own feelings about that individual, thereby removing any option of discretion.  All individuals are required to meet all Eligibility Requirements & Business Guidelines to receive payouts.

24. The McMillian Dictionary defines discretionary as based on someone's judgement of a particular situation rather than on a set of rules. The Merriam-Webster dictionary defines discretionary as "left to individual choice or judgement; available to be used when and how you decide.

25. There were 3 different incentive programs that hinged on the Business Unit Incentive program.   Monthly emails were sent at the end of every month with the next month's Incentive programs eligibility criteria.   In 2016, a $25 Team Award

(teams with highest Attainment) and $10 Individual Award (person with the highest attainment on the winning team) was initiated.  An email was sent at the start of the additional Incentive programs explaining the eligibility criteria.  The email explained that these additional incentive programs were extensions of the original incentive program and hinged on the initial performance results.  This means that an employee or employees could receive up to 3 separate incentives in the same month.  The company used different codes for the awards although all awards hinged on the initial Nondiscretionary Incentive Program.

## **Fiduciary Duty**

26.   29 U.S.C. §1109(a) provides that: Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

27. ERISA requires a plan's combined assets to be held in trust and legally owned by the plan trustees. See 29 U.S.C. § 1103(a) (providing that "all assets of an employee benefit plan shall be held in trust by one or more trustees").  Because a defined contribution plan is essentially the sum of its parts, losses attributable to the

account of an individual participant are necessarily "losses to the plan" for purposes of § 409(a).

28.  "To establish liability for a breach of fiduciary duty under any of the provisions of ERISA § 502(a), a plaintiff must first show that the defendant is in fact a fiduciary with respect to the plan." Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1277 (11th Cir. 2005).  In determining fiduciary status under ERISA, "a court must ask whether a person is a fiduciary with respect to the particular activity at issue." Id. ERISA provides that a person can become a fiduciary by: (1) being a "named fiduciary" in the plan instrument, (2) exercising discretionary authority or control over the management of the plan, (3) exercising *any* authority or control over the management or disposition of plan assets, (4) rendering investment advice for a fee or having authority or responsibility to do so, or (5) having any discretionary authority or responsibility over plan administration. 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(21)(A); see ITPE Pension Fund v. Hall, 334 F.3d 1011, 1012 (11th Cir. 2003) ("Certain persons, including those who 'exercise any authority or control respecting management or disposition of [fund] assets,' bear fiduciary responsibility to an ERISA fund.").

## Unpaid Time

29.  The federal Fair Labor Standards Act (FLSA) classifies the time worked by nonexempt employees for the benefit of their employer as hours worked for the

purpose of minimum wage and overtime compliance. In some cases, this includes situations where an employee works outside his or her scheduled time without explicit permission but the employer knows or has reason to know the employee is doing so. This time is known as "time suffered or permitted to work" and it must be counted as hours worked. 29 CFR 785.11.

30. The Company changed the timekeeping method between 8 and 10 years ago.  The prior for timekeeping method was desktop phones but now the timekeeping System is MyTime. The employees were required to log into the desktop computer and MyTime will automatically capture the login, timestamp then log into the desk phone to assist customers.  However, throughout the years, the login process has become very challenging because it takes approximately two - three minutes for the Mytime system to come up.  We were advised that we should only use the phone to login after contacting a manager regarding the latency issue and the desk phone log would be used for timekeeping .  This method has caused many employees to incur occurrences and/or not be paid for the time between when they first attempted to log in and when they were able to locate a manager to advise of the situation and return back to their desk.  For years, management has been aware that the employees have been using an alternate method of immediately logging into the deskphone when the desktop computer has delays to ensure that they do not receive an occurrence and get paid for most of the time.  Although, management has repeatedly stated we must be logged in on time and that we cannot log into the

phone prior to logging into MyTime, they have not resolved the latency issues.  The

only alternative the employees have come up with is that we log into the desktop

computer two to three minutes prior to shift start time to ensure that the

timekeeping system captures the scheduled login time .  Neither plaintiff nor other

employees were compensated for the additional time worked when the timekeeping

system failed to capture the correct login time thereby resulting unpaid wages.

These wages were not included in participants' pay to be allotted the necessary

treatment for possible overtime pay when required and compensation for allocation

towards employee contributions, employer matching contributions and employer

contributions.

### **Erroneous Employee Contribution Amounts**

31. During the period January 2009 through February 2018, AT&T failed to deduct

    correct amount from participants' pay as employee contributions to the Savings

    Plan.  This error occurred when the timekeeping system did not function properly

    and again when Incentive Compensation earned from the Monthly Incentive

    Programs were not included in compensation totals.  In doing so, the Company

    failed to remit the correct amount of employee contributions and interest for the

    unremitted contributions to the Savings Plan.

32. Unremitted employee contributions are assets of the Plan within the meaning of

    ERISA.  By failing to remit employee contributions, defendants AT&T, Inc. and AT&T

Services, Inc. failed to segregate the Plan assets from the general assets of the Company.

33. Check dated 3/31/2017 reflects that only 5.935% was applied to the 401k contribution instead of the full 6% which resulted in only $101.44 being collected and remitted instead of $102.56.  The incentive compensation that was previously discussed is not a catalyst for this issue.

### Missing Employer Match and Employer Contributions

34.  During the period January 2009 through December 2018, AT&T remitted employer match contributions to the Savings Plan but neglected to include all Compensation, by excluding Monthly Incentive payout amounts.

35. Employer contributions remitted to the Pension during this time, were remitted in erroneous amounts because of incorrect Pension Compensation amounts.

36.  At the time of the remittances, the Company possessed sufficient funds to pay the mandatory employer contributions, and hence effort to collect the correct amount of the contributions would have been successful.

37.  During the period of January 2009 to January 28, 2019, the Company failed to segregate the contributions from company assets as soon as they reasonably could since the employee and employer matching contributions are not credited to the Plan until the Thursday of the following week.   Plaintiff also contends that, because

of the Company's successful ongoing practice of electronically submitting employees' payroll checks to the banking institutions two days prior to payday shows that there is no hindrance to readily segregating the Plan, this method should be used to submit the employee and employer matching contributions on payday as they can easily be segregated from company assets.  This would allow the Company to electronically submit the contributions on Friday for processing on Monday.

38. The Company has caused harm to the Plan and the Plan assets due to the losses it incurred causing impairment the value of the 401(k) assets in a participant's individual account.  *James LaRue v. DeWolff, Boberg & Associates, Inc., et al.*

39. ERISA§409(a) and 502(a)(2) permits recovery of all plan losses caused by a breach of fiduciary duty.

## Incentives (Bonuses) coded incorrectly on checks

40.  The codes associated with the incentive payouts are coded differently from pay period to pay period, which affects how the money is treated for taxing purposes.  The awards were Cash awards but were coded as Cash Awd-Non-Disc (FLSA), Taxable Non-Cash Award, Non-Cash Award, and Non-Cash Awd Tax Gross-up.  The "Paystub Dictionary", an included document, shows the Cash Awd-Non-Disc (FLSA) as being previously used for the Company Annual Award.  However, bargained employees do not receive annual awards, they only receive monthly awards.

41. In 2015, the Company began applying bonuses to debit cards to help with taxes, according to Manager Felicia Landry.  A few months later, Ms Landry stated that the

bonuses had to be applied onto the paychecks again.  The bonuses were coded

erroneously and some of the large bonus amounts were split and coded into different

categories which caused the 2 amounts to be taxed at different rates.  Although, the $25

Team Award was applied towards the debit cards and coded as Non-Cash Awd, the $10

Individual Award was not.

## Required to Purchase Goods from AT&T eStore (Online) With Awards

42. The plaintiff was required to purchase goods from the AT&T online store with the $10

Individual Award.  The unusable portions of the awards were forfeited when         taxes

reduced the available purchase amount.  We were advised that no money could roll

over to the next month.  In addition to this, taxes were applied towards the W-2 wages

for the full award amount even when the full award amount was unable to be used.

## Tax Exempt Wages Taxed

43. The plaintiff was taxed on wages that would have been exempted from taxes when

the bonuses were not included as Compensation.   The bonuses were also taxed at

elevated rates due to miscoding of the incentives on the payroll check as Non-Cash

Awards.

## Fund Exchange Issues

44. Fidelity failed to carry out plaintiff's investment instructions as directed on February

15, 2018, and declined to make necessary adjustments to correct issue when

advised on the following day.  The Agent stated that they had to listen to the tape to

make sure that plaintiff was telling the truth.  The plaintiff pleaded to just change it

so that the money would trade properly.  She was told that it could not be changed

until the call was listened to and that they would recalculate the funds to ensure

that she was reimbursed properly due to the delay in processing.  This process was

to take a few weeks but took longer and when they finally validated that the

information she provided was correct, said that they had to file a case to have it

corrected.  After several phone calls, a portion of the changes were made on

April 30, 2018 but there were no adjustments to account for the exchange issues.

Upon contacting Fidelity again, I spoke with a Supervisor and nothing was

accomplished from the numerous interactions with her.  On June 8, 2018, the

Supervisor composed a letter with erroneous information regarding the initial trade

request and when I reached out to her about it, she left a message stating that if I

had any other issues regarding this situation, to write a letter.  A letter was

submitted to Fidelity on July 26, 2018 but there was no response received.  When I

contacted them a few months later, I was told that both letters (Savings Plan and

Pension Plan) had been mailed in September and they would resend but nothing

was received.  Finally, a response was received after calling again the following

month.

45.   29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 502(a)(1)(B) of ERISA allows a plan

participant or beneficiary "to recover benefits due to him under the terms of his

plan, to enforce his rights under the terms of the plan, or to clarify his rights to

future benefits under the terms of the plan."

### Termination of Bargained Benefit and Retirement Plans

46. "Upon the recognition of a labor organization as the exclusive bargaining representative of Eligible Employees of the Employer, no plan amendment that (1) modifies the benefits, rights, and features under the Plan (except as required by applicable law) and (2) is adopted after the date such recognition occurs will become effective with respect to such Eligible Employees unless such modifications are the subject of bona fide negotiations with such recognized labor organization".

47. A terminating plan must be amended for all current law that applies to the plan and takes effect as of the date of termination. This is true even if the plan would not otherwise be required to amend the plan by that date based on the plan's remedial amendment cycle.

### Cingular Wireless 401(K) Savings Plan Terminated In Error

48. The Summary Plan Description of the Cingular Wireless 401(k) Savings Plan (the "Plan") was amended and restated on January 1, 2006.  The section, "Other Company Plans", states that the Company sponsors 2 additional savings plans.  The names of all plans sponsored by the Company are: (1) Cingular Wireless 401(k) Savings Plan (the "Plan), (2) Cingular Wireless 401(k) Retirement Savings Plan

Page 16

("CRSP") and (3) Cingular Wireless Savings Plan ("CSP").  Although, the 2006

Settlement Agreement between the Communications Workers of America "the

Union" and Cingular Wireless, LLC was effective from March 27, 2006 through March

27, 2010, did not negotiate any changes to the Plan, the Plan was terminated on

December 31, 2008 and the Active Participants' Company match benefit amount

was changed from 100% of 1st 3% and 60% of next 3% to 80%.  The undated and

unsigned draft of the 11th Amendment to the Cingular Wireless 401(k) Savings Plan

(the "Plan"), was used for the December 31, 2008 plan termination.  The draft

actually makes reference to the Cingular Wireless Savings Plan for Puerto Rico "CSP",

not Cingular Wireless 401(k) Savings Plan (the "Plan").

## Cingular Wireless 401(K) Savings Plan (The "Plan")

49. The Cingular Wireless 401(k) Savings Plan (the "Plan") and Cingular Wireless Pension

Plan (Plan), defined contribution and defined benefit plans, were adopted on

November 1, 2001.  The Plan Sponsor was Cingular Wireless, LLC and the

Administrative Committee for the "Plan", was the Administrator for the plan.  The

"Plan" permitted participants to contribute a portion of their pay as elective salary

deferrals ("employee contributions") through payroll deductions.  The Employer

partially funds the "Plan" by providing a matching contribution equal to 100% of 1st

3% and 60% of next 3% of the amount of such Before-Tax and/or After-Tax

Contributions or a combination thereof, of such Active Participant's

Compensation.  The Employee and Employers contributions were required to be applied an Active Participants account on the same day.  Cingular Wireless, LLC also fully funded the Pension Plan.

## Benefits Updates Issues For Cingular Wireless Savings Plans

50.  The Benefits Update dated October 30, 2008 states that on December 5, 2008, Pacific Bell Directory South employees with accounts in the AT&T Savings and Security Plan (ASSP) will have their accounts transferred into AT&T Retirement Savings Plan (ARSP).  This document references using the AT&T Retirement Savings Plan Prospectus and ARSP Summary Plan Description with the same date.

51. The Benefits Update dated November 28, 2008 states that on December 31, 2008, employees with accounts in the Cingular Wireless Savings Plan (CSP) or Cingular Wireless 401(k) Retirement Savings Plan (CRSP) will have their accounts transferred into AT&T Savings Plan (ASP), and the Company match benefit will now be 80% of participants basic contribution (up to 6% of salary).  The document also states, "If you are currently participating in the CSP or CRSP, you will automatically begin to participate in the ASP at your current contribution level.

52. The Benefits Updates provided to Plan participants do not reference Cingular Wireless 401(k) Retirement Savings Plan ("the Plan").  Therefore the accounts of the plan participants of Cingular Wireless 401(k) Retirement Savings Plan (the "Plan")

should not have been transferred from the Cingular Wireless 401(k) Savings Plan into the AT&T Retirement Savings Plan (ARSP) without renegotiating bargained Plan terms.

## Benefit

53. According to Jennifer Roberts, in a letter dated February 27, 2017, the term "benefit" is not defined in the Employee Retirement Income Security Act of 1974 ("ERISA") that governs tax-qualified plans, including 401(k) plans. She later states that "Generally, in 401(k) plans, referred to a Defined Contribution plans, the term "benefit" refers to the account balance that a participant has accumulated in the plan.

54. However, there are specific benefits that an employee receives while participating in a Defined Contribution plan as stated in the "Benefits At A Glance" section of pages 9 and 10 of the 2015 AT&T Summary Plan Description.  The benefit definition does not simply change to the final account balance when the plan is terminated.

## Hindrance to Employee Fighting for her Rights

55. Management has made it very difficult for plaintiff to obtain information regarding these different issues by refusing to direct her to the correct department to address issues, even when directed to do so.  At one point, there was a document placed on her desk during lunchtime.  The document heading stated, "Gearing up the Cloud,

AT&T Tells It's Worker: Adapt, or Else.  This document was not placed on any of the other employees' desks.

## Violations

56. Plaintiff incorporates by reference all the foregoing paragraphs pursuant to Rule 10(c) of the Federal Rules of Civil Procedure.

57. Fidelity failed to carry out plaintiff's investment directions as instructed.

58. The Company failed to monitor the Service Provider, Fidelity and ensure that there are procedures in place to follow up on participant complaints.

59. The Service Provider, Fidelity, failed to ensure that proper procedures were set in place to verify whether all eligible compensation was being reported by the Company to ensure compliance.

60. The Company failed to adhere to Plan documents.

61. The Company, knowingly, allowed employees to work without being paid for all time worked when they were required to log into desktops prior to start of shift.

62. By the actions and conduct described above, Defendants AT&T, Inc. and AT&T Services, Inc. as fiduciaries of the Savings plan and Pension plan:

    A.   failed to ensure that the assets of the Plan did not inure to the benefit of the Company in violation of Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1);

    B.   failed to discharge their duties with respect to the Savings plan and Pension Plan solely in the interest of participants and beneficiaries for the exclusive purpose of

providing benefits to the participants and their beneficiaries and defraying reasonable expenses of administering the Savings plan and Pension Plan, in violation of Section 404(a)(1)(A) of ERISA, 29 U.S.C. § 1104(a)(1)(A);

C.  failed to discharge their duties with respect to the Savings plan and Pension plans solely in the interest of participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of Section 404(a)(1)(B) of ERISA, 29 U.S.C. § 1104(a)(1)(B);

D.  failed to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of Title I and IV of ERISA in violation of Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D);

E.  caused the Savings plan and Pension plans to engage in transactions which they knew or should have known constituted the lending of money or extension of other credit between the Plans and a party-in-interest, in violation of Section 406(a)(1)(B) of ERISA, 29 U.S.C. § 1106(a)(1)(B);

F.  caused the Savings plan and Pension plans to engage in transactions which they knew or should have known constituted the direct or indirect transfer of Plan assets to, or use of Plan assets by or for the benefit of a party-in-interest, in violation of Section 406(a)(1)(D) of ERISA, 29 U.S.C. § 1106(a)(1)(D); and

Page 21

G.  dealt with Savings plan and Pension plan assets in their own interest or for their own account, in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b)(1); and

H.  acted in a transaction involving the Savings plan and Pension plan on behalf of a party whose interests were adverse to the interest of the Plans and to the interest of the Savings plan and Pension plan.

63.  Fidelity failed to timely

64.  Fidelity and the Company participated knowingly in or knowingly undertook to conceal acts or omissions by the others that they knew to be violations of ERISA.  By each participating knowingly in these fiduciary breaches of the other.  Fidelity and the Company are each liable for the others breaches of fiduciary responsibility, pursuant to Section 405(a)(1) of ERISA, 29 U.S.C. § 1105(a)(1).

65.  Fidelity and the Company failed to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and enabled the others to commit breaches of ERISA.  By failing to comply with Section 404(a)(1) of ERISA in the administration of their specific fiduciary responsibilities and thereby enabling others to commit breaches of ERISA, Fidelity and the Company are liable for the others' breaches of fiduciary responsibility, pursuant to 405(a)(2) of ERISA, 29 U.S.C. § 1105(a)(2).

66.  Fidelity and the Company knew that the other had violated ERISA, but did not make reasonable efforts under the circumstances to remedy the others' breaches.  By failing to make reasonable efforts under the circumstances to remedy the others'

breaches of which they had knowledge, Fidelity and the Company, as fiduciaries of the Savings plan and Pension plan are liable for each other fiduciary breaches, pursuant to 405(a)(3) of ERISA, 29 U.S.C. § 1105(a)(3).

## **Prayer for Relief**

67. The plaintiff requests that this court issue an order:

A. Ordering the defendants to provide back pay to employees in reference to unpaid work in regards to the timekeeping system.

B. Requiring each of the fiduciary defendants, Fidelity and the Company, jointly and severally to restore to the Savings plan and Pension plans all losses, including interest or lost opportunity costs for both Plans and the cost of the independent fiduciary, which were caused by their fiduciary breaches;

C. Requiring each of the fiduciary defendants, Fidelity and the Company, to disgorge to the Savings plan and Pension plans any and all unjust enrichment they have received as a result of the fiduciary breaches;

D. Requiring the Company to appoint an independent fiduciary with plenary authority and control with respect to the management and administration of the Savings plan and Pension plan including the authority to marshal assets and to pursue claims on behalf of the Savings plan and Pension plan and to take all appropriate actions for the administration of the Savings plan and Pension plan, with all costs to be borne by the defendants.

E.  Requiring the defendants to pay for all costs associated with the appointment of an independent fiduciary, both now and as long as the Company Sponsors a retirement plan, whether defined contribution or defined benefit.

F.  Ordering the defendants to electronically submit the employee and employer matching contributions to the Servicing center on payday for timely processing.

G.  Ordering the defendants to restore the previous company match due to terminating the Cingular Wireless 401(k) Savings Plan in error.

H.  Ordering the defendants to retroactively correct all said employee and employer matching contributions with previous company match, with interest from January 2009 until said time as this litigation is complete.

I.  Requiring the defendants to pay a sum of money as the court deems fair due to loss opportunity and trading issues.

J.  Requiring the defendants to pay an appropriate sum of money due to incorrect dividend payouts.

K.  Requiring the defendants to restore all tax amounts that were taxed incorrectly.

L.  Requiring the defendants, their agents, employees, service providers, banks, accountants, and attorneys to provide the independent fiduciary with all of the books, documents, and records relating to the finances and administration of the Savings Plan and Pension Plan, and to make an accounting to the independent fiduciary of all contributions to the Savings Plan and Pension Plan and all transfer, payments, or expenses incurred or paid in connection with the Savings

Plan and Pension Plan;

M.  Barring the defendants from engaging in any future violations of ERISA;

N.  Awarding plaintiff no less than $5,000 for harassment and intimidation inflicted

upon her due to addressing said issues;

O.  Awarding plaintiff reasonable fees and costs (to serve as attorney's fees) for

bringing this action pursuant to 29 U.S.C.§1132(g); and

P.   Awarding such other relief as is equitable and just.

SAMANTHA J JACKSON
221 TENNESSEE  STREET  LAFAYETTE, LA 70501
(337) 380-3750

Page 25