# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

**SAMANTHA J JACKSON**         **CASE NO.  6:19-CV-00116**

**VERSUS**                    **JUDGE JUNEAU**

**A T & T RETIREMENT SAVINGS    MAGISTRATE JUDGE HANNA
PLAN ET AL**

## REPORT AND RECOMMENDATION

Before the Court are four Motions to Dismiss pursuant to F.R.C.P. Rule 12(b)(6) filed on behalf of Defendants, AT&T Retirement Savings Plan, Mobility Program of the AT&T Benefit Plan, AT&T Inc., AT&T Services, Inc., Fidelity Workplace Services LLC, and AT&T Mobility Services, LLC.[1] (Rec. Doc. 6; 23; 30; 35). Plaintiff, Samantha Jackson, proceeding *pro se*, opposed. (Rec. Doc. 33 and 40). Defendants replied. (Rec. Doc. 37 and 43). The Motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Defendants' Motions at Rec. Doc. 6 and 23 be DENIED AS MOOT and that Defendants' Motion to Dismiss at Rec. Doc. 30 and 35 be GRANTED IN PART AND DENIED IN PART.

---

[1]     See Rec. Doc. 35-1, fn. 2 regarding names of defendant entities.

**<u>Factual and Procedural History</u>**

Plaintiff, a *pro se* litigant, filed this lawsuit on January 29, 2019 alleging various transgressions against Defendants related to her employment with AT&T. (Rec. Doc. 1). Before Defendants answered the suit, Plaintiff filed a First Amended Complaint in which she clarified her claims to include thirteen counts for alleged violations of the Employment Retirement Income Security Program (ERISA), Fair Labor Standards Act (FLSA), fraud, harassment and retaliation, *inter alia*. (Rec. Doc. 3). In response, Defendants filed their first Motion to Dismiss Plaintiff's First Amended Complaint. (Rec. Doc. 6). Without opposing that Motion, Plaintiff filed her Second Amended Complaint wherein she added additional defendants, Fidelity Investments and AT&T Mobility Services, LLC and additional claims for fraudulent Statements made to Government and State Agency and Theft by Deception. (Rec. Doc. 17). Defendants then filed their next Motion to Dismiss the Second Amended Complaint. (Rec. Doc. 23). Again, Plaintiff did not oppose this Motion but instead filed a Third Amended Complaint. (Rec. Doc. 22).

Review of the Third Amended Complaint clarifies that Plaintiff began her employment with AT&T Mobility Services, LLC (previously Cingular Wireless) in July 2003. (Rec. Doc. 28, ¶28). During her employment, she participated in the Cingular Wireless 401(k) Savings Plan, which was transferred to the AT&T Retirement Savings Plan in December 2008. (Rec. Doc. 28, ¶28-29). Plaintiff alleged

that the contribution amounts deposited into the Savings Plan were incorrect and that there were inconsistencies with the way incentives were coded on her payroll check. (Rec. Doc. 28, ¶30-31). When she attempted to address these issues with AT&T, she alleged that she encountered roadblocks from within the payroll department and management. (Rec. Doc. 28, ¶32). She further claims that incentive payouts were incorrectly coded on paychecks and improperly taxed, resulting in losses, which have not been refunded. (Rec. Doc. 28, ¶33-40). In addition, Plaintiff asserts that Kathy Vallot created a hostile work environment from mid-2016 through mid-2017, with the most recent encounter in 2018, by making sarcastic remarks, insulting, threatening, ostracizing, withholding or supplying incorrect work-related information, sabotaging projects, passive-aggressive behavior, providing contradictory instructions, making false statements, intimidating, defaming, and the like. (Rec. Doc. 28, ¶41-49). Plaintiff asserts the following Counts:

- Count I: Breach of Fiduciary Responsibility, arising out of her claims vis-à-vis the retirement savings plans and contributions. (Rec. Doc. 28, ¶50-57).

- Count II and Count III: Fraud and Tortious Interference, respectively, arising out the transfer of the Cingular Wireless 401(k) Savings Plan to the AT&T Savings Plan. (Rec. Doc. 28, ¶58-69).

- Count IV: Workplace Violation and Retaliation, arising out of her dealings with Kathy Vallot. (Rec. Doc. 28, ¶70-71).

- Count V: Defamation, arising out of her dealings with Kathy Vallot. (Rec. Doc. 28, ¶72-73).

- Count VI: Intentional Infliction of Emotional Distress (IIED), arising out of her dealings with Kathy Vallot. (Rec. Doc. 28, ¶74-5).

- Count VII: Negligent Infliction of Emotional Distress (NIED) arising out of her dealings with Kathy Vallot. (Rec. Doc. 28, ¶76-78).

- Count VIII: Negligent Retention, Training and Supervision, arising out of her dealings with Kathy Vallot. (Rec. Doc. 28, ¶79-80).

- Count VIII: Fair Labor Standards Act (FLSA) Violations, arising out of an alleged delay in AT&T's timekeeping system, resulting in time worked but not paid. (Rec. Doc. 28, ¶81-82).

Defendants filed a Motion to Dismiss Plaintiff's Third Amended Complaint on July 10, 2019. (Rec. Doc. 30). The Court subsequently consolidated Defendants' first three pending Motions to Dismiss for hearing on September 12, 2019. Given the procedural history of this case and the fact that Defendants' two most recent Motions to Dismiss (Rec. Doc. 30 and 35) incorporate the arguments set forth in the two prior Motions to Dismiss, the Court recommends that Defendants' Motions to Dismiss Plaintiff's First and Second Amended Complaints (Rec. Doc. 6 and 23) be denied as moot. The Court will therefore address Defendants' most recent Motions to Dismiss Plaintiff's Third Amended Complaint. (Rec. Doc. 30 and 35). As Defendants point out, the latter Motion (Rec. Doc. 35) tracks the arguments made in the former (Rec. Doc. 30). (See Rec. Doc. 35-1).

## **Applicable Law**

### I.    **Law applicable to Rule 12(b)(6)**

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that

merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc*., 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap,* 541 F.3d

584, 587 (5th Cir.2008). With these precepts in mind, the Court considers the Plaintiff's Complaints, including the exhibits attached thereto.

## II.  Whether Plaintiff has stated a claim for breach of fiduciary duty under ERISA.

"Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid [e] for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), quoting 29 U.S.C. § 1001(b).  Plaintiff has asserted breach of fiduciary duty claims pursuant to ERISA §502(A)(2) and (3), 29 U.S.C. §1132(a)(2) and ERISA §409, 29 U.S.C. §1109.

### A. Whether Plaintiff's allegations state a claim for breach of fiduciary duties or a disguised claim for benefits.

Breach of fiduciary duty claims under ERISA must be distinguished from claims for benefits.  "[A]lthough benefits claims require administrative exhaustion, fiduciary claims do *not.*" *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 339 (5th Cir. 2006) (Emphasis in original.). "[T]he exhaustion requirement [also] applies to fiduciary claims that are [] *disguised benefits claims,* not to true breach-of-fiduciary-duty claims." *Id.* citing *Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir.1990) (Emphasis in original.). The court in *Haydel v. Dow Chem. Co*., described the distinction between claims against fiduciaries and claims for benefits as follows:

Fiduciary claims amount to benefits claims when resolution of the claims rests upon an interpretation and application of an ERISA-regulated plan rather than on an interpretation and application of ERISA. *Galvan v. SBC Pension Benefit Plan*, 204 Fed. Appx. 335, 339 (5th Cir. 2006). A plaintiff that prevails on a fiduciary claim cannot recover benefits due only to *that plaintiff*; recovery on fiduciary claims must provide relief to the entire plan. *Total Plan Servs., Inc. v. Tex. Retailers Ass'n*, 932 F.2d 357, 358 (5th Cir. 1991); *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 863 (7th Cir. 1997) ("Any recovery under [29 U.S.C. § 1132(a)(2) ] for breach of fiduciary duty must go to the plan as a whole rather than to individual beneficiaries.").

Thus it is clear that a plaintiff cannot recover in her individual capacity as a plan participant under 29 U.S.C. § 1109, and its remedial provision, 29 U.S.C. § 1132(a)(2). Those sections provide relief only for a plan and not for individual participants. Therefore if a fiduciary breaches its duty, it owes the plan reimbursement, but it does not owe the individual participants any recovery. *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140-44 (1985); *see McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1997). Accordingly, an individual has no private right of action for breach of fiduciary duty under ERISA. *See Mass. Mutual Life Ins.*, 473 U.S. at 144; *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 92 (6th Cir. 1997). The statutory provision explicitly authorizing a beneficiary to bring an action to enforce her rights under an ERISA plan is 29 U.S.C. § 1132(a)(1)(B). This section provides relief for a denial of benefits *to an individual participant.*

*Haydel v. Dow Chem. Co.,* No. CV 07-71-JJB, 2007 WL 9706565, at *2–3 (M.D. La. July 19, 2007)

See also *Milofsky v. Am. Airlines, Inc.,* wherein the Fifth Circuit held that a claim by various plan participants seeking to recover losses to a benefits plan allegedly arising from the failure to effectuate the timely transfer of the plaintiffs' account balances from a prior plan to the new plan constituted a claim for breach of

fiduciary duties, rather than a claim seeking distribution of benefits. *Milofsky v. Am. Airlines, Inc.,* 442 F.3d 311, 313 (5th Cir.2006).

Since the Middle District decided *Haydel*, the Supreme Court rendered *LaRue v. DeWolff, Bobert & Associates, Inc.,* which held that "although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 256 (2008). The *LaRue* Court distinguished between defined benefit plans, consisting of plans offering a fixed benefit payment based on a percentage of the employee's salary (as adjudicated in its earlier opinion in *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134 (1985), upon which the *Haydel* court relied) and defined contribution plans, which are characterized by payouts based upon an individual's contributions and investment performance. *Id*. at 250; fn. 1; 254-55. Under a *Russell* and *Haydel* analysis, a plaintiff could not pursue a claim for breach of fiduciary duties for individual losses, but now, under *LaRue*, a plaintiff can assert claims for individual losses to defined contribution plans due to a fiduciary's breach. Ultimately, the *LaRue* Court held that the plaintiff could proceed with his individual fiduciary duty claims that the plan administrator failed to make requested changes to his individual investment account, resulting in a depleted interest in the plan. *Id*. at 256.

Plaintiff's Complaint passes muster under either *Russell*/*Haydel* (upon which Defendants rely) or *LaRue* (upon which Plaintiff relies). In *Haydel* the court considered whether Plaintiff had stated a claim for breach of fiduciary duties which could proceed as a civil action under §502(a), 29 U.S.C. §1132(a), rather than a claim for benefits owed under the plan, in which case exhaustion of administrative remedies was required. In holding that the plaintiff had failed to state a claim for breach of fiduciary duties, the court reasoned as follows:

> Although Plaintiff asserts that Defendants have breached their fiduciary duty, her fiduciary claim is in truth a denial of benefits claim under 29 U.S.C. § 1132(a)(1)(B). For example, Plaintiff claims that Defendants failed to pay amounts "owed to *petitioner*" pursuant to an ERISA plan. In paragraph six, Plaintiff claims that the benefits under the ERISA plan were "owed and despite the court's order, *petitioner* never received said sum...." In paragraph eight, Plaintiff avers that "[p]etitioner brings this civil action as an enforcement of *her rights* under 29 U.S.C. § 1132(a) as a *beneficiary* to recover for Defendants' breach of fiduciary duty...." Finally, in paragraph nine, Plaintiff alleges that "[p]etitioner was deprived of *her right* to earn interest on the full [amount of benefits] due" under the ERISA plan.
>
> Plaintiff's allegations are telling. She is asserting an individual right to benefits under an ERISA plan. Recovery in this manner cannot be sought under a fiduciary duty claim. There is no averment that the plan as a whole was injured. As discussed *supra*, this is the essential allegation necessary to state a fiduciary duty claim.
>
> *Haydel,* 07 WL 9706565 at *3.

*Haydel* is distinguishable from the instant case. Rather than alleging that the plan administrators caused her individual losses, Plaintiff in this case specifically alleged, for instance, that Defendants failed to include supplemental compensation

in calculating contribution amounts being remitted to the plans and that Defendants "have caused harm to the Plan and the Plan assets due to the losses it incurred." (Rec. Doc. 28, ¶51; 54). Plaintiff's allegations are consistently couched in terms of the Plan(s) as a whole and the benefits of "participants" and "beneficiaries." Plaintiff's prayer for relief requests that Defendants restore all losses to the Plans, among numerous other requests relative to the Plans in general. (Rec. Doc. 28, at 27-30). Plaintiff's claims are not focused on her individual losses resulting from the alleged breaches. Even had Plaintiff sought more individualized recovery, because she has alleged the Plans are defined contribution plans,[2] Plaintiff's claims would withstand Rule 12(b)(6) scrutiny under *LaRue*.

Neither does this finding offend the Supreme Court's ruling in *Varity Corp. v. Howe*. In *Varity*, the Supreme Court held that the plaintiffs (plan participants and beneficiaries) could bring individual civil claims for equitable relief under §502(a)(3) for breach of fiduciary duties. *Varity Corp. v. Howe*, 516 U.S.C. 489, 515 (1996). The Court distinguished its ruling from its earlier holding in *Russell*, *supra*, which addressed an individual's right to bring a civil claim under §502(a)(2) for breach of fiduciary duties. Thus, to the extent Plaintiff asserts claims pursuant to §502(a)(3) in addition to her claims under §502(a)(2) (see e.g. Rec. Doc. 28, at ¶2;

---

[2]     Rec. Doc. 28, ¶4-5.

16), the Court finds that she has stated a *Varity* claim in seeking equitable relief such as requiring fiduciary defendants to "disgorge to the [Plans] any and all unjust enrichment," and requiring the appointment of an independent fiduciary, *inter alia*. (Rec. Doc. 28, at ¶83).

Plaintiff alleged that "[i]n February 2018, Fidelity failed to process fund exchanges as requested and when advised of the error on the following day stated that they would have to listen to the recording to correct and have only partially resolved the issue." (Rec. Doc. 28, at ¶40). The Court finds that the Complaint lacks sufficient allegations to assert a §502(a) claim with regard to this alleged event. Rather, these allegations appear to relate to an individual claim for benefits. Plaintiff should be permitted an opportunity to amend to clarify facts underlying this alleged failure to process fund exchange and whether this allegation constitutes an alleged breach of fiduciary duty or an individual claim.

## B. Whether Plaintiff's factual allegations state a claim for breach of fiduciary duty.

In the Fourth Motion to Dismiss before the Court AT&T Mobility asserts that Plaintiff's factual allegations fail to support a claim for breach of fiduciary duties by that entity, because Plaintiff did not allege that AT&T Mobility had fiduciary responsibility for the Plans, the source of that fiduciary responsibility, or how AT&T Mobility allegedly breached its fiduciary responsibility. (Rec. Doc. 35-1, at 9-10).

ERISA defines a fiduciary as follows:

12

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21).

An employer may be a fiduciary to the extent it qualifies as such under the foregoing and it is a plan administrator whose challenged conduct was plan-related in nature. *Varity*, 516 U.S. at 503. Fiduciaries are charged with extensive obligations enumerated in 29 U.S.C. §1104, including the discharge of their duties with respect to a plan solely in the interest of the participants and beneficiaries and with care, skill, prudence, and diligence; the diversification of the investments of the plan so as to minimize the risk of large losses; and the management of the plan in accordance with its governing documents and instruments. §1104(a).

Plaintiff alleges that she is an employee of AT&T Mobility Services. (Rec. Doc. 28). Many of her subsequent allegations refer only to "AT&T," without specifying the specific AT&T entity to which she is referring. For instance, she alleges that "AT&T transferred the participants' accounts" from the Cingular Plan to the AT&T Plan without following proper procedures. (Rec. Doc. 28, ¶29). She further claims that AT&T, AT&T Services and AT&T Mobility failed to comply

with the Plan text, failed to include supplemental compensation when calculating contribution amounts, resulting in incorrect contribution amounts being applied to the plans, and failed to segregate contributions from company assets, apparently resulting in delayed credit (Rec. Doc. 28, ¶33; 51-53).

Construing these allegations in Plaintiff's favor, the Court finds that Plaintiff has set forth facts showing that AT&T Mobility, as her employer, could qualify as a fiduciary, and that the factual allegations could conceivably show breach of fiduciary duties. For instance, ERISA requires that fiduciaries comply with all plan documents, and Plaintiff specifically alleges that AT&T Mobility failed to comply with plan documents when transferring from the Cingular Plan to the AT&T Plans. Further, assuming the facts as true, AT&T Mobility's alleged conduct of incorrectly calculating contributions is conceivably inconsistent with its obligation to administer or control the plan for the best interest of the beneficiaries. Thus, the Court finds that Plaintiff has stated a claim for breach of fiduciary duties under ERISA.

### C. **Whether Plaintiff's breach of fiduciary duty claims are time-barred.**

Defendants next move to dismiss Plaintiff's breach of fiduciary claims as time barred under §413, 29 U.S.C. §1113, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest

> date on which the fiduciary could have cured the breach or violation, or

> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

§413 is one of repose, "establishing an outside limit of six years in which to file suit, and tolling does not apply." *Radford v. Gen. Dynamics Corp*., 151 F.3d 396, 400 (5th Cir.1998). "As a statute of repose, §413 serves as an absolute barrier to an untimely suit." *Id*. "Under this statutory scheme, the limitations period for ERISA claims is generally six years, unless defendants can show that the plaintiffs had actual knowledge of alleged wrongdoing, in which case section 1113(2) extinguishes the claim after three years." *Smith v. Prager*, 108 F.3d 333 (5th Cir.1997). The statutory period of limitations commences with the plaintiff's actual knowledge of the breach:

> [Actual knowledge] requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA.

> *Maher v. Strachan Shipping Co.,* 68 F.3d 951, 954 (5th Cir.1995), quoting and adopting the Third Circuit's standard in *Int'l Union v. Murata Erie North America,* 980 F.2d 889, 900 (3d Cir.1992).

In other words, a participant's knowledge of an event alone is insufficient to trigger the time delays of §413. The participant's knowledge that the event may

15

constitute a breach of fiduciary duty triggers the applicable time period. *See also United States v. Ret. Servs. Grp.,* 302 F.3d 425, 433 (5th Cir. 2002), quoting *Maher,* 68 F.3d at 955 (quoting *Brock v. Nellis,* 809 F.2d 753, 755 (11th Cir.1987) with approval). ("To charge the Secretary [of Labor] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues."). Absent fraud or concealment, a participant may not bring a claim later than "six years after the date of discovery of such breach or violation." §413. "Discovery" "must mean something more than to suspect but something less than to confirm with absolute certainty as to all the possibly material details." *U.S. v. Ret. Servs. Group, supra*, relying on *Maher* in interpreting 12 U.S.C. §1715z-4a.

Plaintiff alleged that Defendants failed to include supplemental compensation in determining contribution amounts between January 2009 and December 2018. (Rec. Doc. 28, ¶33; 51). She alleged that in 2015 she realized the contribution amounts deposited into the Savings Plan were incorrect, and she noticed inconsistencies with the incentive payout tax treatment codes on the payroll check. (Rec. Doc. 28, ¶30; 34-35). She filed this suit on January 29, 2019. (Rec. Doc. 1).

Assuming without deciding that the conduct complained of constitutes a breach of fiduciary duties, Plaintiff's time to file suit did not commence until she had actual knowledge that Defendants' alleged conduct potentially constituted a

breach of fiduciary duty. Although Plaintiff alleged that she discovered the alleged discrepancies in 2015 (Rec. Doc. 28, ¶30), the Complaint is unclear as to the date on which Plaintiff realized that the alleged conduct constituted an alleged breach. She argued in opposition that she was "not aware that AT&T thwarted the rules of the program until…2017," (Rec. Doc. 33, at 21, ¶E), and that "she was unable to ascertain that the Savings Plan was terminated with [the wrong] document] until January 2019 (Rec. Doc. 33, at 22¶F). She argued at the hearing that after initially noticing a problem, it took two years, until 2017, before Defendants provided the documents which helped her to understand the problem. Given these statements, the Court finds that Plaintiff should be permitted the opportunity to amend her Complaint to clarify when she first became aware that the complained of conduct potentially constituted a breach. Absent allegations as to the date of "discovery" for purposes of §413, the Court cannot ascertain whether Plaintiff's claims are time-barred.

### III.    **Whether Plaintiff has stated a claim for unpaid wages or overtime under the FLSA.**

In Count IX, Plaintiff asserts a claim for Fair Labor Standards Act violations arising out of alleged delays in her ability to clock in due to delays in the timekeeping system.

The FLSA provides that "no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). An employee bringing an action for unpaid overtime compensation must first demonstrate by a preponderance of the evidence: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due.

*Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir.2014).

Defendants argue that Plaintiff failed to allege facts showing that she engaged in compensable activities. The Court agrees.

Under the Portal-to-Portal Act, employers are not liable for compensation to employees for  (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and (2) activities which are preliminary to or postliminary to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. 29 U.S.C. 254(a); *Chambers v. Sears Roebuck & Co.,* 428 Fed.Appx. 400, 409 (5th Cir.2011).

In *Steiner v. Mitchell,* the Supreme Court determined that preliminary or postliminary activities are compensable if they are not specifically excluded under section 254(a)(1) and are "an integral and indispensable part of the principal activities for which covered

18

workmen are employed." "To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer." However, even if an activity might otherwise be compensable, we may disregard *de minimis* claims " 'concern[ing] only a few seconds or minutes of work beyond the scheduled working hours.' " As the Ninth Circuit said in *Lindow v. United States,* 738 F.2d 1057 (9th Cir.1984), "[m]ost courts have found daily periods of approximately 10 minutes *de minimus* even though otherwise compensable."

*Von Friewalde v. Boeing Aerospace Operations, Inc.,* 339 Fed.Appx. 448, 454 (5th Cir.2009) (Citations omitted.)

In analyzing whether an activity is de minimis, courts look to several factors: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." *Chambers,* 428 Fed.Appx. at 415 (5th Cir. 2011), citing *Rutti v. Lojack Corp., Inc.,* 596 F.3d 1046, 1057 (9th Cir.2010). "The three-prong test 'reflects a balance between requiring an employer to pay for activities it requires of its employees and the need to avoid 'split-second absurdities' that 'are not justified by the actuality of the working conditions.'" *Id.*

Plaintiff did not allege what activities she performed during the two to three minute delay allegedly caused by the time system. She stated at the hearing that during that time she was "booting up" the computer and programs she needed to

work.[3] Her allegations, even if assumed true, do not support a finding that the allegedly missed time was anything more than *de minimis*. Therefore, the Court finds that Plaintiff has not stated a claim under the FLSA.

## IV.    Whether Plaintiff has stated a claim for fraud.

Defendants next move to dismiss Plaintiff's claims for fraud, arguing that Plaintiff's allegations lack the specificity necessary to state fraud claims, that such claims are preempted to the extent they relate to a covered plan, and they are otherwise time-barred under Louisiana prescriptive rules.

### A. Whether ERISA preempts Plaintiff's fraud claims.

The Fifth Circuit explained ERISA's preemption standard as follows:

> ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a) (expressly excepting two situations not applicable here). A state cause of action relates to an employee benefit plan whenever it has "a connection with or reference to such plan." *Hubbard v. Blue Cross & Blue Shield Assoc.,* 42 F.3d 942, 945 (5th Cir.1995) (citations omitted). Despite its broad construction of ERISA's supersedure language, the United States Supreme Court has indicated that it will not extend the "relate to" language to its outer limit. In *Shaw v. Delta Air Lines, Inc.,* the Supreme Court noted that "[s]ome state actions may affect employee benefit

---

[3]    Plaintiff did not set forth these specific allegations in the Complaint, such that the Court cannot consider such statements under Rule 12(b)(6). However, even if Plaintiff were to amend to allege these facts in the Complaint, the Court would not find that such allegations constitute compensable time under the FLSA. Hence, the Court finds an opportunity to amend in this regard would be futile. See *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.,* 710 F. App'x 625, 628 (5th Cir.2017) (unpublished).

plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21.

*Hobson v. Robinson*, 75 Fed.Appx. 949, 952 (5th Cir.2003) (Footnotes omitted.)

Plaintiff's allegations which appear to relate to the Plans include: termination of the Cingular Wireless Plan and lowering the company match (Rec. Doc. 28, ¶61; 63); submission of documents to the IRS regarding termination of the Cingular Wireless Plan (Rec. Doc. 28, ¶62-63); decreasing incentive eligibility and improperly classifying it, resulting in improper taxing and the alleged failure to include supplemental compensation to be remitted to the Plan and resulting inadequate contributions (Rec. Doc. 28, ¶59-60; 64-66). Therefore, the Court finds that claims for fraud arising out of these alleged activities are preempted by ERISA and must be dismissed.

### B. **Whether Plaintiff's fraud claims are otherwise prescribed.**

Defendants moved to dismiss Plaintiff's fraud claims which are unrelated to the Plans as prescribed under Louisiana Civil Code article 3492. Fraud may arise under tort or contract theories of liability. *Clark v. Constellation Brands, Inc.,* 348 Fed.Appx. 19, 21 (5th Cir.2009). In this instance, Plaintiff's claim for fraud (assuming any such claim survives ERISA preemption) sound in tort,[4] and as such,

---

[4]    Plaintiff claims that Defendants fraudulently coded compensation payments and used the incorrect termination documents for the Plans. On the face of the pleadings, her claims do

it prescribes one year from the date of the injury or from the date on which the plaintiff knew or should have known of the injury. *Aetna Cas. & Sur. Co. v. Stewart Const. Co.,* 00-1332 (La. App. 5 Cir. 2/28/01), 780 So.2d 1253, 1256.

Plaintiff alleges that that Defendants "engaged in willful and deceitful acts," identified above, from January 2009 through December 2018. (Rec. Doc. 28, ¶67). Further, she argues in opposition that she was unable to ascertain that the Savings Plan was terminated with [the incorrect] document until January 2019." (Rec. Doc. 33, at 22, ¶F.3). For the same reasons the Court finds the Complaint lacking in sufficient information to determine whether Plaintiff's claims for breach of fiduciary duty are timely, the Court finds that the Complaint lacks sufficient allegations to determine whether Plaintiff's non-preempted claim for fraud (assuming any such claim exists) is time-barred.

**C. <u>Whether Plaintiff has stated a claim for fraud.</u>**

F.R.C.P. Rule 9(b) requires that fraud, including claims arising out of state law, be pled with particularity. *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177 (5th Cir.1997). In Louisiana, "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other[, which] may also result from silence or

---

not arise out of any contract between Plaintiff and any Defendants. See discussion in *Clark, id.*

inaction." La. C.C. art. 1953. Under Fifth Circuit law, "[t]he elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury. *Williams*, 112 F.3d at 177, citing *Cyrak v. Lemon,* 919 F.2d 320 (5th Cir.1990). "Pleading fraud with particularity in this circuit requires 'time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *Id*., citing *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994). "Directly put, the who, what, when, and where must be laid out *before* access to the discovery process is granted." *Id*. at 178.

Assuming that any fraud claim survives ERISA preemption and are thus subject to a fraud analysis, Plaintiff alleges that in 2015, she "noticed inconsistencies with the Incentive payout tax treatment codes on the payroll check," which she specifically described in the subsequent paragraph.  (Rec. Doc. 28, ¶30-31). She further alleged that "she continually hit roadblocks with the AT&T payroll department and management," until she was referred to the incentives department, but she was not provided the contact information, though she tried for several months. (Rec. Doc. 28, ¶32). During that time, she claims that a document entitled, "Gearing up the Cloud, AT&T Tells it's [sic] Worker: Adapt, or Else," was placed on her desk. (Rec. Doc. 28, ¶32). Ultimately, she alleged that she was overtaxed due

to these incorrect calculations and/or codes being used. (Rec. Doc. 28, ¶34). She then goes into detail about the Incentive Plan and what constitutes discretionary incentives. (Rec. Doc. 36-39). The Court does not find that these allegations allege fraud with the particularity required by F.R.C.P. Rule 9(b). Plaintiff did not allege that any particular individual made a misrepresentation to her upon which she relied to her detriment. Plaintiff's statement, "that there is some confusion, by Company, of what the document actually means" (Rec. Doc. 38), supports the conclusion that her claims arise more from disagreement among co-workers and with company policy than from fraud. Thus, the Court finds that Plaintiff has not stated a claim for fraud.

## V.   **Whether Plaintiff has stated a claim for tortious interference.**

Plaintiff asserts tortious interference of contract as Count III based upon the same factual allegations giving rise to her fraud claims. Although Louisiana technically recognizes the tort of tortious interference with contract, its application is exceedingly limited. See scholarly discussion in *City of Alexandria v. Cleco Corp.,* 735 F. Supp. 2d 448, 453-56 (W.D. La. 2010). The elements of tortious interference are:

> (1) the existence of a contract or a legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or causation of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; (5) causation of damages to the

plaintiff by the breach of contract or difficulty of its performance brought about by the officer.

*City of Alexandria,* citing *9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228, 229–30 (La.1989).

Plaintiff's allegations regarding the incentive payouts and Defendants' alleged transgressions relative thereto do not show the existence of a contract or legally protected interest between her and Defendants or any of the other elements necessary to state a claim for tortious interference with contract. The Court finds that this theory is inapplicable to the alleged facts and that Plaintiff's claims should be dismissed.

**VI.**   **Plaintiff's claims for "workplace violence," NIED, and IIED.**

In Count IV, entitled "Workplace Violence, Retaliation…," Plaintiff alleges that "[w]hen Kathy Vallot engaged in Workplace bullying by malicious behavior, she failed to provide a safe or healthful place of employment." (Rec. Doc. 28, ¶71). Plaintiff did not assert a particular provision in the law upon which she bases this claim. In opposition to Defendants' Motions, she cites law applicable to the intentional act exception to workers' compensation immunity. (Rec. Doc. 33, at 28). The Court disagrees with Defendants' position that "[t]his count…fails to state a claim for relief because it does not state any cognizable action under the law." (Rec. Doc. 35-1, at 17). Rather, the Court finds that Plaintiff's allegations regarding Kathy

Vallot are tort-based claims, subsumed by her claims for intentional infliction of emotional distress (IIED) and negligent infliction of emotional distress (NIED).

## A. <u>Non-Intentional Tort Claims</u>

Plaintiff asserts claims for NIED and negligent retention, training and supervision as Counts VII and VIII, respectively. Defendants move to dismiss these negligence-based claims as preempted by Louisiana's workers' compensation scheme. "[N]egligence claims challenging employment decisions are preempted by Louisiana worker's compensation law, which provides the exclusive remedy for workplace injuries." *Metoyer v. Am. Eagle Airlines, Inc.,* 806 F.Supp.2d 911, 922 (W.D. La. 2011), citing La. R.S. 23:1032A(1)(a). Thus, Plaintiff is precluded from asserting negligence claims, including NIED and negligent retention and the like, and the Court finds that these claims should be dismissed.

Even without workers' compensation preclusion, Plaintiff's claim for NIED would fail. "Louisiana does not generally recognize an independent cause of action for negligent infliction of emotional distress." *Id*., citing *DirectTV*[*Directv* ], *Inc. v. Atwood,* 2003 WL 22765354, at *3 (E.D.La.2003); *Lann v. Davis,* 793 So.2d 463, 466 (La.App. 2d Cir.2001). If, as in this case, the plaintiff has not alleged physical injury, her claim for NIED fails as a matter of law "[a]bsent an 'especially high likelihood' of 'genuine and serious mental distress' arising from 'special circumstances,' all of which serves as a 'guarantee that the claim is not spurious,'

the claim fails as a matter of law." *Id*.; *Covington v. Howard*, 146 So.3d 933, 937 (La. App. 2 Cir. 2014). Further, the defendant's conduct must be "extreme and outrageous" in order for the plaintiff to prevail on a theory of NIED. *Covington,* 146 So.3d at 938.

Plaintiff alleges that Kathy Vallot's "workplace violence" resulted in her emotional distress. (Rec. Doc. 28, ¶78). The Complaint describes Vallot's conduct generally as "making sarcastic remarks, deliberate insults, threats, overbearing supervision, blatant ostracism, withholding or supplying incorrect work-related information, sabotaging projects, passive-aggressive behavior, providing contradictory instructions on process requests and coding…making false accusations and false statements in plaintiff's file, bullying, intimidation, verbal bashings, taunting…" (Rec. Doc. 28, ¶41). The Complaint then goes on to detail her interactions with Vallot and other co-workers (Rec. Doc. 28, ¶42-49); however, Plaintiff has not alleged any physical injury, and the Court does not perceive any threats or insults within those factual allegations sufficient to establish the especially high likelihood of severe mental distress or any special circumstances. Thus, the Court finds that Plaintiff has failed to state a claim for NIED.

Plaintiff's claims for negligent retention, training and supervision, presumably relative to Kathy Vallot, would similarly fail even if allowed to proceed. Such claims against an employer are governed by Louisiana's duty-risk analysis.

27

*Cote v. City of Shreveport*, 46,571 (La. App. 2 Cir. 9/21/11), 73 So. 3d 435, 440, citing *Griffin v. Kmart Corp.,* 00–1334 (La.App.5th Cir.11/28/00), 776 So.2d 1226, 1231. "When an employer hires an employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party, he has a duty to exercise reasonable care in the selection of that employee." *Id*. In cases where liability has been found, the employer placed the tortious employee in a unique situation which allowed the employee to commit the tort, such as allowing the employee access to the plaintiff's home or allowing the employee access to a weapon. *Kelley v. Dyson*, 08-1202 (La. App. 5 Cir. 3/24/09), 10 So. 3d 283, 288, collecting cases. The Court does not appreciate that type of opportunity in this case.

Plaintiff's allegations do not show that Kathy Vallot, or any other employee had a unique opportunity to commit any tort. Indeed, Plaintiff's allegations do not show that any tort was actually committed. Although Plaintiff alleged that Vallot made "threats," the Complaint lacks specific facts supporting that any threat of physical harm was made. Therefore, the Court finds that Plaintiff has not stated a claim for negligent employment decisions.

## B. Intentional Infliction of Emotional Distress

Louisiana's Workers Compensation scheme excepts intentional acts from the scope of the employer's tort immunity. La. R.S. 23:1032(B). Thus, Plaintiff is not preempted from asserting an IIED claim. To succeed on an IIED claim, Plaintiff

must prove: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict sever emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). "For an employer's actions to qualify as 'extreme and outrageous' they must be truly extraordinary." *Kell v. Iberville Bank*, 352 F. Supp. 3d 650, 662 (E.D. La. 2018), citing *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1027 (La. 2000) (collecting cases). "[T]he cause of action [is limited] to cases which involve a pattern of deliberate, repeated harassment over a period of time." *Nicholas, 765 So.2d* at 1026. "Normally, a personnel decision, even if it is wrong, does not give rise to an intentional infliction of emotional distress claim." *Kell, 352 F.Supp.3d at 663, citing Nicholas*, 765 So.2d at 1027 (citing *Smith v. Ouchita Par. Sch. Bd.*, 702 So.2d 727, 738 (La. App. 2 Cir. 1997)).

For the same reasons that Plaintiff failed to state a claim for NIED, she has likewise failed to state a claim for IIED. Her allegations, even assumed as true, do not support a finding that Defendants conduct, including the statements alleged at ¶42 and generally alleged "sarcastic remarks," was "extreme and outrageous." Nor do the allegations support a finding that Plaintiff suffered from severe emotional distress. Although she alleged that she "broke down crying on many occasions," (Rec. Doc. 28, ¶47), this is insufficient. See e.g. *Thomas v. CLECO*, No. CV 17-CV-

1119, 2018 WL 3827390, at *3 (W.D. La. July 25, 2018), report and recommendation adopted, No. 17-CV-1119, 2018 WL 3825222 (W.D. La. Aug. 10, 2018), appeal dismissed sub nom. *Nicholas,* 765 So.2d at 1030 (Employee's humiliation, anxiety, confusion, upset, and worry was not "more than a reasonable employee might be expected to endure in the workplace," and he therefore did not sustain severe emotional distress.); *Thomas v. Cleco Power, L.L.C.,* No. 18-30944, 2018 WL 7317172 (5th Cir. Aug. 29, 2018) (Allegations of nightmares, crying, and three counseling sessions insufficient to show severe emotional distress.) Therefore, the Court recommends that Plaintiff's claim for IIED be dismissed.

## VII.   Whether Plaintiff has stated a claim for defamation.

Plaintiff asserts defamation as Count V, apparently based on her allegations regarding the plan and her alleged issues with Kathy Vallot. The Louisiana Supreme Court set forth the following rules relative to defamation:

> Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. "Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." The fault requirement is often set forth in the jurisprudence as malice, actual or implied. Thus, in order to prevail on a defamation claim, a plaintiff must prove " 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.' " If even one of the required elements of the tort is lacking, the cause of action fails.

> *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 139–40 (Citations omitted.)

The Complaint lacks allegations showing a publication. Plaintiff alleges that Vallot made various statements, including that Plaintiff was "double-dipping," "cheating the system," and trying to get points for working two cases at [the] same time" (Rec. Doc. 28, ¶42); however, "'statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication.'" *Danna v. Ritz-Carlton Hotel Co., LLC*, 2015-0651 (La. App. 4 Cir. 5/11/16), 213 So. 3d 26, 34, *writ denied sub nom. Danna v. The Ritz-Carlton Hotel Co., LLC*, 2016-1552 (La. 11/18/16), 210 So. 3d 285, quoting *Bell v. Rogers,* 29,757, p. 10 (La.App. 2 Cir. 8/20/97), 698 So.2d 749, 756. Hence, the Court finds that Plaintiff has failed to state a claim for defamation.

**VIII.  <u>Whether Plaintiff can proceed against AT&T.</u>**

Defendants last move to dismiss AT&T Inc. on the grounds that the Court lacks jurisdiction over that entity. (Rec. Doc. 30-1, at 23, referencing argument at Rec. Doc. 6-1, at 28). Defendants submitted evidence establishing that AT&T Inc. is a holding company that does not do business in Louisiana, does not have any employees, does not manufacture a product, does not provide services to the public, does not have an office or mailing address in Louisiana, does not own, lease, manage, maintain, or possess any real right to immovable property in Louisiana, does not provide services to consumers in Louisiana, and does not pay taxes in

Louisiana. (Rec. Doc. 6-4). Counsel for AT&T further affirmatively represented at the hearing that AT&T Inc. would not be answerable for any judgment which may be awarded in this case. In prior unrelated lawsuits, this Court previously held that AT&T Inc. has insufficient minimum contacts with the state of Louisiana to permit the exercise of personal jurisdiction over it in this forum. *Thibodeaux v. AT&T Mobility Servs., LLC,* No. 6:17-CV-00261, 2017 WL 1885820, at *4 (W.D. La. Apr. 20, 2017), report and recommendation adopted, No. 6:17-CV-00261, 2017 WL 1901664 (W.D. La. May 8, 2017); *Leong v. Cellco Partnership*, No. 6:12-cv-00711, 2013 WL 3213069, at *6 (W.D. La. June 24, 2013), amended on reconsideration on other grounds, 2013 WL 4009320 (W.D. La. July 31, 2013). Thus, the Court recommends that Plaintiff's claims against AT&T Inc. be dismissed.

## Conclusion

For the reasons discussed herein, it is recommended that Defendants' Motions at Rec. Doc. 6 and 23 be DENIED AS MOOT and that Defendants' Motions to Dismiss at Rec. Doc. 30 and 35 be GRANTED IN PART AND DENIED IN PART, as follows:

- Motion to Dismiss Plaintiff's ERISA claims for breach of fiduciary duty under 29 U.S.C. §1132 – DENIED WITHOUT PREJUDICE. Plaintiff should be given an opportunity to amend to assert facts regarding her discovery that the allegedly improper conduct constituted a breach of fiduciary duties,

for purposes of determining whether her claims are time-barred, as set forth in Section II.C. Plaintiff should also be permitted to amend the Complaint to allege facts regarding the February 2018 fund exchange as discussed in Section II.A. Defendants should be permitted to re-urge the Motion on these grounds only.

- Motion to Dismiss Plaintiff's claims for fraud – GRANTED.

- Motion to Dismiss Plaintiff's claims for FLSA violations – GRANTED.

- Motion to Dismiss Plaintiff's claims for tortious interference of contract – GRANTED.

- Motion to Dismiss Plaintiff's claims for defamation – GRANTED.

- Motion to Dismiss Plaintiff's claims for NIED, IIED, and negligent employment decisions – GRANTED.

- Motion to Dismiss AT&T Inc. – GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

33

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 17th day of September, 2019.

_____
PATRICK J. HANNA
UNITED STATE MAGISTRATE JUDGE