**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

SAMANTHA J JACKSON            CASE NO.  6:19-CV-00116

VERSUS                                    JUDGE JUNEAU

A T & T RETIREMENT SAVINGS    MAGISTRATE JUDGE HANNA
PLAN ET AL

## REPORT AND RECOMMENDATION

Before the Court is the Motion to Dismiss Plaintiff's Fourth Amended Complaint pursuant to F.R.C.P. Rule 12(b)(6) filed on behalf of Defendants, AT&T Retirement Savings Plan, Mobility Program of the AT&T Benefit Plan, Fidelity Workplace Services LLC, and AT&T Mobility Services, LLC. (Rec. Doc. 72). Plaintiff, Samantha Jackson, proceeding *pro se*, opposed. (Rec. Doc. 75). Defendants replied. (Rec. Doc. 76). The Motions were referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of this Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is recommended that Defendants' Motion to Dismiss be GRANTED.

## Factual and Procedural History

This is the second time Defendants have moved to dismiss Plaintiff's complaint. Plaintiff, a *pro se* litigant, filed this lawsuit on January 29, 2019 alleging

various transgressions against Defendants related to her employment with AT&T, including primarily ERISA-based claims. (Rec. Doc. 1; 3). She amended the Complaint three times (Rec. Doc. 3; 17; 22; 28) before the Court considered a series of Defendants' Rule 12(b)(6) motions to dismiss.

After considering voluminous pleadings and the parties' arguments at a hearing on Defendants' four prior motions to dismiss, the Court issued a Report and Recommendation, subsequently adopted by the District Court, with clarification, wherein the Court dismissed Plaintiff's claims for fraud, violations of the Fair Labor Standards Act, tortious interference with contract, defamation, negligent infliction of emotional distress (NIED), intentional infliction of emotional distress (IIED), negligent employment decisions, and all claims against AT&T Inc. for lack of jurisdiction. The Court denied Defendant's motions to dismiss Plaintiff's ERISA claims for breach of fiduciary duty under 29 U.S.C. §1132 and held that Plaintiff be given an opportunity to amend to assert facts regarding her discovery that the allegedly improper conduct constituted a breach of fiduciary duties, for purposes of determining whether her claims are time-barred. (Rec. Doc. 53, adopted, with clarification, at Rec. Doc. 67).

Pursuant to the Court's Order, Plaintiff filed her Fourth Amended Complaint on November 19, 2019. (Rec. Doc. 71). The Fourth Amended Complaint "incorporates by reference each breach of fiduciary duty claim and count, request

2

for damages, and all supporting evidence set out in her Original Complaint as well as her First and Third Amended Complaints[.]" (Rec. Doc. 71, p. 4). The Fourth Complaint sets forth the following pertinent factual allegations:

- Plaintiff began her employment with Cingular Wireless in July 2003, during which time she participated in the Cingular Wireless 401(k) Savings Plan (which consisted of a 90% employer match) and the Cingular Wireless Bargained Pension Plan (which was fully funded by the employer). (Rec. Doc. 71, ¶30, p. 13). During her Cingular employment, Plaintiff and other employees participated in the monthly incentive program. Their total compensation included overtime and supplemental compensation.

- In December 2008, the Cingular 401(k) Plan merged into the AT&T Retirement Savings Plan, which provided an 80% employer match. In 2006, the Cingular Pension Plan became the Wireless Program of the AT&T Pension Benefit Plan, and in July 2011, it was renamed the Mobility Program of the AT&T Pension Benefit Plan. This Plan was fully funded by the employer. With the AT&T Plans, the employees' compensation was defined as base pay, lump sum special payments, and nondiscretionary incentive compensation (with each term further specifically defined). (Rec. Doc. 71, ¶30, p. 14).

- The employees participated in the AT&T Monthly Incentive Program, paid bi-weekly. The Incentive Program operates as a guarantee that AT&T will pay the employees upon meeting the guidelines. (Rec. Doc. 71, ¶30, p. 14-15).

- In June 2015, managers informed employees that incentive payouts would be applied to debit cards to help with taxes. On July 24, 2015, Plaintiff inquired as to what the tax treatment code, "Non-cash Awd Tax Gross-up" meant under the new rules. (Rec. Doc. 71, ¶31, p.12). Thereafter, the Complaint details Plaintiff's ongoing attempts to get clarification from various departments on how payroll incentives were coded and taxed and to obtain pertinent Plan documents through at least February 2017. (Rec. Doc. 71, ¶31, p. 16-22). Throughout 2017, 2018, and 2019 Plaintiff continued researching, including reviewing the Plan documents (which she apparently received in 2017), and became aware of additional issues regarding tax coding of incentive payments and compensation. (Rec. Doc. 71, ¶31-32, p. 22-28).

- In January 2019, Plaintiff realized that her Cingular 401(k) Plan had been erroneously terminated and transferred to the AT&T Retirement Savings Plan by an unsigned and undated document, "the 11th Amendment." (Rec. Doc. 71, ¶32, p. 28-29).

- In August 2019, Plaintiff realized that checks dated from October 14, 2016 through January 18, 2019 reflected that incentives were paid 45-60 days after

the performance period. Further, Plaintiff alleged generally that employees in the position of Customer Service Rep. I were paid less, though they temporarily performed the work of a Customer Service Rep. II. Plaintiff did not allege whether she held the position of Customer Service Rep. I. (Rec. Doc. 71, ¶32, p. 44-45).

- In February 2018, Plaintiff directed Fidelity (administrator of the AT&T Plans) to exchange certain funds in the Savings Plan and to change future contribution allocations; however, Fidelity did not properly complete the exchange. After reviewing tape recordings between Plaintiff and the Fidelity Representation regarding Plaintiff's instructions for the exchange and several additional discussions with Fidelity representatives, the exchanges were in April 2018. Plaintiff claims she suffered a loss of $45.92 as a result of the delayed exchanges. She further alleged that Fidelity's actions vis-à-vis the fund exchanges caused her to suffer individual losses since 2015, which have not been restored and therefore caused losses to the plan as a whole. (Rec. Doc. 71, ¶34, p. 31-33).

Based on the foregoing factual allegations, Plaintiff's Fourth Amended Complaint asserts only Count I for Breach of Fiduciary Duty, arising out of 1) Defendants' alleged improper termination and transfer of the Cingular Plan, resulting in smaller contribution amounts, in detriment to the plan; 2) Defendants'

hindering of Plaintiff from obtaining plan-related information; 3) Defendants' failure to timely segregate Plan assets from Defendants' general assets; and 4) Defendants' improper compensation calculations and classifications, *inter alia*, in violation of ERISA, 29 U.S.C. §1104(a)(1). (Rec. Doc. 71, ¶35, p. 33-40).

Defendants filed the Motion to Dismiss Plaintiff's Fourth Amended Complaint on the grounds that 1) Plaintiff's claims are individual claims for benefits disguised as ERISA breach of fiduciary duty claims; 2) her factual allegations do not show a breach of fiduciary duties; and 3) breach of fiduciary duty claims are untimely. (Rec. Doc. 72-1, p. 14-28).

## **Law and Analysis**

### **I.    Law applicable to Rule 12(b)(6).**

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th

Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from

conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap*, 541 F.3d 584, 587 (5th Cir.2008).

Defendants' challenges to Plaintiff's Fourth Amended Complaint are reminiscent of their arguments to dismiss Plaintiff's prior complaints. Thus, the Court's analysis is similar.

## II.    <u>Whether Plaintiff has stated a claim for breach of fiduciary duty under ERISA.</u>

"Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies,

sanctions, and ready access to the Federal courts.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), quoting 29 U.S.C. §1001(b).  Plaintiff asserts ERISA breach of fiduciary duty claims under 29 U.S.C. §§1103(c)(1); 1104(a)(1)(A)(B) and (D); 1105(a); 1106(a)(1)(D) and (b)(1).

### A. <u>Whether Plaintiff's allegations present a claim for breach of fiduciary duties or a disguised claim for benefits.</u>

Defendants again argue that Plaintiff's claims for breach of fiduciary duties are in fact disguised claims for individual benefits, again relying upon *Haydel v. Dow Chem. Co.*, No. CV 07-71-JJB, 2007 WL 9706565, at *2–3 (M.D. La. July 19, 2007). As discussed in the Court's prior Report and Recommendation, breach of fiduciary duty claims under ERISA must be distinguished from claims for benefits, in that benefits claims require administrative exhaustion, while fiduciary claims do not. Rec. Doc. 53, p. 7 (adopted, with clarification by Rec. Doc. 67), citing *Galvan v. SBC Pension Benefit Plan*, 204 F. App'x 335, 339 (5th Cir. 2006) "[T]he exhaustion requirement [also] applies to fiduciary claims that are [] *disguised benefits claims,* not to true breach-of-fiduciary-duty claims." *Id.* citing *Simmons v. Willcox,* 911 F.2d 1077, 1081 (5th Cir.1990) (Emphasis in original.). See further discussion at Rec. Doc. 53, p. 7-12.

The Court does not agree with Defendants that Plaintiff's claim regarding the Plan contribution/compensation issue is a disguised claim for benefits. As with Plaintiff's prior Complaints, the Fourth Complaint alleges that she and other

employees suffered losses in the form of less contributions to the Plans due to Defendants' allegedly improper classification of compensation. (See e.g. Rec. Doc. 71, ¶30-31, p. 13-15, wherein Plaintiff alleges facts pertaining to her and other employees' participation in the incentive program and calculation and/or coding of employees' compensation). One of Plaintiff's primary complaints is that incentive payments were improperly coded on paystubs, resulting in improper taxing and contributions to the Plans. She did not allege that she was the only employee subject to the improper taxing and deficient contributions. It is reasonable to assume, based on Plaintiff's allegations, that other employees' incentive payouts and compensation were coded similarly. Further, Plaintiff specifically alleged that Defendants terminated the Cingular Plan and transferred it to the AT&T Plan improperly, resulting in a lower company match benefit, which in turn "caused smaller contribution amounts which were a detriment to the plan[] and its assets." (Rec. Doc. 71, ¶36-37). Likewise, Plaintiff asserts numerous allegations regarding the detrimental effect of Defendants' conduct on the plan as a whole (see e.g. Rec. Doc. 71, ¶38-40) and on compensation (with requisite effects on tax treatment and contributions) *in general* (see e.g. Rec. Doc. 71, ¶41-47).

As in her prior Complaints, Plaintiff's allegations are consistently couched in terms of the Plan(s) as a whole. Plaintiff's prayer for relief requests that Defendants restore all losses to the Plans, among numerous other requests relative to the Plans

and employees in general. (Rec. Doc. 71, Prayer for Relief, p. 40-43). Plaintiff's claims are not focused on her individual losses resulting from the alleged breaches. Even had Plaintiff sought more individualized recovery, as Defendants urge, because she has alleged the Plans are defined contribution plans,[1] Plaintiff's claims would withstand Rule 12(b)(6) scrutiny under *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 256 (2008).[2] Having found that Plaintiff has sufficiently alleged claims for breach of fiduciary duties, as opposed to claims for individual benefits, with regard to the compensation/contribution issue, the Court declines to address Defendants' argument that Plaintiff failed to exhaust administrative remedies or to timely bring a claim for individual benefits within the one year statute of limitations provided by the Plans.

On the other hand, the Court finds that Plaintiff's claims regarding Fidelity's alleged failure to process the fund exchange constitutes an individual claim, rather than one for breach of fiduciary duties.[3] Plaintiff alleged that on February 15, 2018, she directed Fidelity to process fund exchanges in the Savings Plan. She alleged that the exchange was dilatorily processed, resulting in a loss to her account. (Rec. Doc. 71, ¶ 34, p. 32-33). In fact, the Fourth Amended Complaint states: "Because the fund

---

[1]    Rec. Doc. 71, p. 5; 23.

[2]    See discussion at Rec. Doc. 53, p. 9-11 (adopted, with clarification, at Rec. Doc. 67)

[3]    The Court previously found that the prior Complaints lacked sufficient allegations to assert a §502(a) claim for breach of fiduciary duties with regard to the fund exchange. Thus, the Court permitted Plaintiff to clarify facts underlying this alleged failure to process fund exchange.

exchanges were not processed as directed and the corrections were not made as required, the fiduciaries, plan administrators, caused Plaintiff to suffer individual losses since 2015 which have not been restored…" (Rec. Doc. 71, ¶34, p. 33). Plaintiff's conclusory statement that this "caus[ed] the losses to the plan as a whole" does not convert the individualized claim to one for breach of fiduciary duties. Thus, the Court recommends that Plaintiff's claims vis-à-vis the 2018 Fidelity fund exchange be dismissed.

### B. **Whether Plaintiff's factual allegations state a claim for breach of fiduciary duty.**

Defendants next contend that the decision of the Plan sponsors to change the terms upon conversion from the Cingular Plan to the AT&T Plan does not constitute a breach of fiduciary duty. In order to state a claim for breach of fiduciary duty under ERISA, the plaintiff must put forth facts showing: 1) that the defendant was a fiduciary who, 2) was acting within his capacity as a fiduciary, and 3) breached his fiduciary duty. *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.,* 763 F. Supp. 2d 423, 564–65 (S.D.N.Y. 2011), *on reconsideration,* No. 07 CIV. 10453, 2011 WL 4072027 (S.D.N.Y. Sept. 13, 2011), and *on reconsideration,* No. 07 CIV. 10453, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011), citing 29 U.S.C. § 1109. Before applying the foregoing standards, it is helpful to first condense Plaintiff's detailed and lengthy factual allegations.

Plaintiff alleged that she began working for Cingular in 2003 and is now employed by AT&T, since its acquisition of Cingular. (Rec. Doc. 71, ¶30). Through detailed allegations spanning numerous pages, Plaintiff alleged that AT&T, upon taking over Cingular and transitioning from the Cingular Plan to the AT&T Plan, began classifying certain incentives in such a way that they were not considered for purposes of calculating contributions to the AT&T Plan. (Rec. Doc. 71, ¶30-31). For instance, she alleged that incentives paid as cash were at times classified as non-cash awards or prizes. (Rec. Doc. 71, p. 17). She contends that because the incentives were improperly coded, less money was contributed to the Plans. According to the Plan documents, her incentives should have been included as eligible compensation. (Rec. Doc. 71, p. 18). She attributed the allegedly improper classification of incentives to AT&T Mobility (her employing entity). (Rec. Doc. 71, ¶15); however, she classified the AT&T entities, including AT&T Mobility, as a "Controlled Group of Corporations," and thus a single employer. Plaintiff alleged that over the course of at least two years, she attempted to get information from AT&T about why the incentives were classified in such a way, but that AT&T essentially evaded her requests, by not answering her questions and not providing the plan documents. (Rec. Doc. 71-1, ¶31-32). Finally having obtained pertinent Plan documents, Plaintiff allegedly discovered that the document governing the transition from the Cingular Plan to the AT&T Plan ("the 11th Amendment") was unsigned and undated,

13

a flaw allegedly rendering the document invalid. (Rec. Doc. 71, ¶32). Plaintiff alleged that "AT&T did not follow the standard process before terminating the Plans and transferring the participants' accounts." (Rec. Doc. 71, p. 29). Overall, Plaintiff appears to challenge two primary acts: 1) Defendants' improper classification of the incentives; and 2) Defendant's allegedly improper transition from the Cingular Plan to the AT&T Plan. The Court now turns to the salient inquiries.

### 1.  <u>Whether Defendants were fiduciaries.</u>

ERISA defines a fiduciary as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C.A. § 1002(21).

"A person assumes fiduciary status in three ways under ERISA: first, as a named fiduciary in the instrument establishing the employee benefit plan; second, by becoming a named fiduciary pursuant to a procedure specified in the plan instrument; third, as a 'functional fiduciary' under the broad authority, control, or advice provisions of ERISA." *Perez v. Bruister*, 823 F.3d 250, 259 (5th Cir. 2016) (citations omitted). See also *Reich v. Lancaster*, 55 F.3d 1034, 1046 (5th Cir. 1995),

14

citing *Pacificare Inc. v. Martin,* 34 F.3d 834, 837 (9th Cir.1994). ("An ERISA fiduciary includes anyone who exercises discretionary authority over the plan's management, anyone who exercises authority over the management of its assets, and anyone having discretionary authority or responsibility in the plan's administration.")

Plaintiff alleged that AT&T Services, Inc. served as the Plan Administrator and Named Fiduciary and that Fidelity was also a fiduciary of the Savings plan and Pension plan. (Rec. Doc. 71, ¶6; 8). She further alleged AT&T Mobility and AT&T Services are fiduciaries as the[y] exercise discretionary authority or control respecting management or disposition of the Plan's assets…" (Rec. Doc. 71, ¶26). These allegations are sufficient to show that Defendants are fiduciaries under ERISA.

## 2. <u>Whether Defendants were acting in their capacity as fiduciaries.</u>

Whether Defendants qualify as fiduciaries is not the primary dispute in this case. "ERISA does not prevent persons with 'conflicting loyalties'—such as a financial interest adverse to that of the ESOP beneficiaries—from serving as a trustee or named fiduciary of the plan." Perez, 823 F.3d at 259, citing *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 412 (5th Cir.2003). "To assist in resolving this potential conflict, the Supreme Court created the 'two hats' doctrine, which acknowledges that the [fiduciary] is subject to fiduciary duties under ERISA only

'to the extent' that" he performs fiduciary functions as identified by Congress." *Id.* Thus, "the threshold question in every case alleging breach of an ERISA fiduciary duty is "whether [the defendant] was acting as a fiduciary ... when taking the action subject to complaint." *In re Bear Stearns*, quoting *Pegram v. Herdrich,* 530 U.S. 211, 226 (2000).

The Fifth Circuit has adopted the majority approach and held that, "in general, an employer that decides to terminate, amend, or renegotiate a plan does not act as a fiduciary, *and thus cannot violate its fiduciary duty,* provided that the benefits reduced or eliminated are not accrued or vested at the time, and that the amendment does not otherwise violate ERISA or the express terms of the plan." *Izzarelli v. Rexene Prod. Co.,* 24 F.3d 1506, 1524 (5th Cir. 1994) (emphasis in original), adopting the approach taken in *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1158 (3d Cir.1990). The Court finds that, pursuant to the foregoing jurisprudence, Plaintiff's allegations do not show that AT&T was acting as a fiduciary when transitioning from the Cingular Plan to the AT&T Plan.  Rather, Plaintiff's allegations show that AT&T terminated the Plan as part of its acquisition of Cingular. This evidences an employer-rooted decision, rather than one delegated to fiduciaries.

With regard to Plaintiff's claim that Defendant improperly terminated the Cingular Plan with the Eleventh Amendment, "[O]nly an amendment executed in

accordance with the Plan's own procedures and properly noticed could change the Plan." *Manuel v. Turner Indus. Grp., L.L.C.,* 905 F.3d 859, 872 (5th Cir. 2018), *reh'g denied* (Nov. 2, 2018), quoting *Williams v. Plumbers & Steamfitters Local 60 Pension Plan*, 48 F.3d 923, 926 (5th Cir. 1995). Thus, if the Eleventh Amendment was not promulgated pursuant to the procedures set forth in the Plan, it is invalid. Plaintiff alleges that the Eleventh Amendment was undated and unsigned, rendering it invalid. The allegations do not show (and Plaintiff did not attach complete Plan documents to show) that Amendments had to be executed to take effect. Otherwise, the Complaint does not allege other grounds supporting that the Cingular Plan was improperly terminated.

Even further attenuated from their roles as fiduciaries is Defendants' alleged improper classification of the incentives. Rather, the alleged facts suggest that Defendants were merely acting in their capacity as employer when paying cash incentives and coding them as they did on employee pay checks. The facts do not suggest that Defendants were acting in their roles as plan administrators at the time they allegedly improperly classified the incentives. Thus, because AT&T was not acting in its capacity as a fiduciary at the times of the challenged actions, Plaintiff has failed to state a claim for breach of fiduciary duties; however, the Court will address the remaining issues for sake of completeness.

17

### 3.  <u>Whether Defendants breached fiduciary duties.</u>

Fiduciaries are charged with extensive obligations enumerated in 29 U.S.C. §1104, including the discharge of their duties with respect to a plan solely in the interest of the participants and beneficiaries and with care, skill, prudence, and diligence; the diversification of the investments of the plan so as to minimize the risk of large losses; and the management of the plan in accordance with its governing documents and instruments. §1104(a).

> Certain fiduciary duty breaches can injure 401(k) participants generally and indiscriminately: theft from the plan; mapping; noncompliance with ERISA-mandated duties to inform; engaging in transactions that involve conflicts of interest; and setting unreasonable blackouts are among the possibilities. Allegations that ERISA fiduciaries promoted company stock to prop up its value or misled participants could also state plan-wide breaches of fiduciary duties.

> *Langbecker v. Elec. Data Sys. Corp.,* 476 F.3d 299, 308 (5th Cir. 2007) (citations omitted).

A change of plan terms does not constitute a breach of fiduciary duty. *Izzarelli*, 24 F.3d at 1524, quoting *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied,* 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987)), *cert. denied,* —— U.S. ——, 114 S.Ct. 196, 126 L.Ed.2d 154 (1993). ("ERISA simply does not prevent a company from eliminating previously offered benefits that are neither vested nor accrued."). The Court finds that Plaintiff's allegations show that AT&T's conduct in transitioning from the Cingular Plan to the AT&T Plan(s) is akin to a change of plan terms, which does not constitute a breach

of fiduciary duty, absent specific factual allegations that the Eleventh Amendment was required to be executed in order to be effective.

Plaintiff further alleged that AT&T breached its fiduciary duties by 1) failing to segregate Plan assets from general assets by not collecting, matching and remitting contributions immediately; 2) failing to include overtime and other forms of compensation as eligible compensation; and 3) manipulated tax treatment codes to cause incentive payouts to be excluded from eligible compensation, *inter alia*. (Rec. Doc. 71, ¶40-48). The Court finds that, although these actions may suggest a breach of some other employer-related duties, these allegations do not show breaches of ERISA fiduciary duties. Assuming these allegations as true, the alleged acts vis-à-vis employee compensation are too attenuated from plan-related activities to invoke ERISA fiduciary duties.  Therefore, the Court finds that Plaintiff has failed to state a claim for breach of fiduciary duties.

### C. <u>Whether Plaintiff's breach of fiduciary duty claims are time-barred.</u>

Defendants next move to dismiss Plaintiff's breach of fiduciary claims as time barred under §413, 29 U.S.C. §1113, which provides:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

19

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

§413 is one of repose, "establishing an outside limit of six years in which to file suit, and tolling does not apply." *Radford v. Gen. Dynamics Corp*., 151 F.3d 396, 400 (5th Cir.1998). "As a statute of repose, §413 serves as an absolute barrier to an untimely suit." *Id*. "Under this statutory scheme, the limitations period for ERISA claims is generally six years, unless defendants can show that the plaintiffs had actual knowledge of alleged wrongdoing, in which case section 1113(2) extinguishes the claim after three years." *Smith v. Prager*, 108 F.3d 333 (5th Cir.1997). The only exception to the six-year time period is in the case of fraud or concealment, in which case the six-year period runs from the date of discovery. This Court has already found Plaintiff did not state a claim for fraud. (Rec. Doc. 53, and as recognized by the District Court at Rec. Doc. 67). Otherwise, as applicable here, the statutory period of limitations commences with the plaintiff's actual knowledge of the breach:

[Actual knowledge] requires a showing that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim for breach of fiduciary duty or violation under ERISA.

*Maher v. Strachan Shipping Co.,* 68 F.3d 951, 954 (5th Cir.1995), quoting and adopting the Third Circuit's standard in *Int'l Union v. Murata Erie North America,* 980 F.2d 889, 900 (3d Cir.1992).

20

In other words, a participant's knowledge of an event alone is insufficient to trigger the time delays of §413. The participant's knowledge that the event may constitute a breach of fiduciary duty triggers the applicable time period. See also *United States v. Ret. Servs. Grp.,* 302 F.3d 425, 433 (5th Cir. 2002), quoting *Maher,* 68 F.3d at 955 (quoting *Brock v. Nellis,* 809 F.2d 753, 755 (11th Cir.1987) with approval). ("To charge the Secretary [of Labor] with actual knowledge of an ERISA violation, it is not enough that he had notice that something was awry; he must have had specific knowledge of the actual breach of duty upon which he sues."). Absent fraud or concealment, a participant may not bring a claim later than "six years after the date of discovery of such breach or violation." §413. "Discovery" "must mean something more than to suspect but something less than to confirm with absolute certainty as to all the possibly material details." *U.S. v. Ret. Servs. Group, supra*, relying on *Maher* in interpreting 12 U.S.C. §1715z-4a.

Plaintiff alleged that she and other employees began participating in the AT&T Plan in 2009. (Rec. Doc. 71, ¶30, p. 14). In July 2015, she inquired as to the meaning of the tax treatment code on her check stub. (Rec. Doc. 71, ¶31, p. 12). Throughout 2015, she continued to inquire about the tax treatment codes, receiving no answers. (Rec. Doc. 71, ¶31, p. 13). In January 2016, Fidelity informed her that the contributions posted to the participant's accounts within three business days and that overtime was excluded from eligible compensation; however, Fidelity did not

answer her questions regarding the tax treatment codes at that time. (Rec. Doc. 71, ¶31, p. 14). In February 2016, she was instructed to request the Plan Text, but she did not receive the Plan Text until October 2016, after months of attempting to obtain it from Defendants. (Rec. Doc. 71, ¶31, p. 14-15). She continued to communicate with an AT&T attorney, who advised her in February 2017 to obtain a copy of the Incentive Plan. (Rec. Doc. 71, ¶31, p. 16). Throughout 2017, 2018, and 2019, she continued to seek answers from Defendants and continued to research the issues. (Rec. Doc. 71, p. 18-25). She filed this suit on January 29, 2019. (Rec. Doc. 1).

Assuming for these purposes that the conduct complained of constitutes a breach of fiduciary duties, Plaintiff's time to file suit did not commence until she had actual knowledge that Defendants' alleged conduct potentially constituted a breach of fiduciary duty. Plaintiff's allegations indicate a pattern of ongoing attempts beginning in 2016 to gather information about whether the perceived issues were improper. She did not receive a copy of the Plan Text until October 2016, and the bulk of her research appears to have occurred in 2017 and 2018. As such, Plaintiff did not obtain the requisite actual knowledge until after 2016, rendering her claims for breach of fiduciary duties timely. Although subsequent discovery could reveal facts suggesting that Plaintiff had the requisite actual knowledge prior to 2016, the factual allegations, construed in Plaintiff's favor, show that Plaintiff's claims are timely as having been filed within three years of her actual knowledge.

## **Conclusion**

The Court finds that Plaintiff has presented claims for breach of fiduciary duties, rather than a disguised claim for benefits, and that these claims are timely under §1113. However, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted under the ERISA statutes, because the allegations do not show that Defendants were acting in their fiduciary capacities at the time of the challenged conduct alleged. Neither do Plaintiff's allegations show that Defendants' alleged conduct constituted a breach of fiduciary duties under §1104. For these reasons, the Court recommends that Defendants' Motion to Dismiss (Rec. Doc. 72) be GRANTED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 18th day of February, 2020.

_____

PATRICK J. HANNA
UNITED STATE MAGISTRATE JUDGE